**Salem**

SUE ANN MARION

v.

JAN AUBREY MARION

No. 0933-89-3

Decided February 12, 1991

COUNSEL

Frank A. Mika, for appellant.

Humes J. Franklin, Jr., for appellee.

OPINION

**DUFF, J.**—In this divorce action Sue Ann Marion and Jan Aubrey Marion contest a final decree which decided issues of equitable distribution. Numerous issues are raised by the parties on appeal. For the reasons which follow, we affirm in part, reverse in part and remand for further proceedings consistent herewith.

## I.

Sue Ann Marion (wife) and Jan Aubrey Marion (husband) were married on June 21, 1964, and separated on April 13, 1986, after almost twenty-two years of marriage. Five sons were born of the marriage, two of whom are over the age of eighteen.

At the time of the marriage, the husband had just finished his first year of veterinary school. The wife supported the family and paid for part of her husband's tuition during his final three years of school. Both parties worked to support the family financially during most of the marriage. Aside from a brief period in which the wife assisted in the operation of her husband's veterinary practice, she worked primarily as a part-time teacher and held a few full-time positions.

Around 1974, the husband began operating his own veterinary practice out of the family home. In 1976, using funds obtained from a loan agreement executed by both parties, the husband began operation of his own veterinary hospital. During the first year of operation, the wife assisted her husband in the hospital, answering the phone and doing some bookkeeping. In September 1977, the wife returned to teaching. In 1979, the family moved to a farm house in Augusta County, Virginia. Monetary contributions from both of the parties' families helped the couple to renovate the home. The wife continued to work so as to allow their children to attend school in Waynesboro, Virginia.

In 1984, the couple's relationship became strained when, after a family tragedy, the wife claims to have discovered that her husband had been engaged in an adulterous affair with her sister-in-law. The parties separated approximately two years later. The record is unclear as to whether the husband was engaged in an affair at that time, but it is clear that after the separation, and before the divorce, the husband did engage in an affair with a woman employed at his hospital.

For disputed reasons, the couple paid no taxes in 1986 and, as a result, the IRS claimed a lien of $22,000. As a result of this lien, the wife's checking and savings accounts were seized.

On March 24 and 25, and July 12, 1988, hearings were held relative to the equitable distribution of the couple's property. On May 26, 1989, the court entered a final decree in which it found

that the jointly-owned marital dwelling and the marital personalty had a value of approximately $64,831. The court further found that the Marion Animal Hospital was marital property with a value of $110,000. The wife was granted a cash award of $14,000, the marital dwelling, and jointly-owned marital personalty therein, giving her a total award of $82,329. The husband was awarded the Marion Animal Hospital. After deducting the $14,000 cash award to the wife, the husband was left with property valued at $96,000. The judge further ordered a transfer of real property to satisfy the award.

## II.

The trial court found that both parties contributed, financially and otherwise, to the best of their abilities to the well-being of the family, until shortly before their separation. The wife contends, however, that the husband ceased contributing to the well-being of the family, except financially, sometime around 1981. Thus, she contends, a truly equitable award would have given her more than fifty percent of the marital assets. We find no merit in this contention.

The wife's argument is based upon her alleged mental health problems, the adultery of the husband, her superior non-monetary contributions to the family, and her substantial monetary contribution to the marital home. Relying on *Pommerenke v. Pommerenke*, 7 Va. App. 241, 372 S.E.2d 630 (1988), for the proposition that an initial assumption of equality between the parties is reasonable, the wife contends that the circumstances listed above should elevate her from a position of equality with the husband to one of superiority. While recognizing the soundness of the opinion in *Pommerenke*, we nonetheless feel that it is incorrect to assert that this assumption of equality rises to the level of a presumption. This Court has specifically stated that the term "equitable distribution" does not mean "equal distribution." *Artis v. Artis*, 4 Va. App. 132, 137, 354 S.E.2d 812, 815 (1987). As well, the Virginia legislature expressly requires the court in an equitable distribution hearing to consider the factors enumerated in Code § 20-107.3(E). *Papuchis v. Papuchis*, 2 Va. App. 130, 132, 341 S.E.2d 829, 830-31 (1986); *Williams v. Williams*, 4 Va. App. 19, 22, 354 S.E.2d 64, 67 (1987). We recognize that a trial court has broad discretion in the consideration it gives to the statutory factors in fashioning an equitable monetary award. As a reviewing

court, we accord deference to this discretion and will not reverse in the absence of its abuse. The trial court clearly gave considerable weight to factors other than those pointed out by the wife. The trial court noted that $46,000 in goodwill had accrued to the veterinary practice "solely because of Dr. Marion's skills and energy." The court also recognized that profits from the veterinary practice were the primary source of funds used to pay the loan for purchase and building of the animal hospital. The court found that each party had made essentially an equal contribution, monetary and nonmonetary, to the well-being of the family.

■ A review of the record indicates that each of the eleven statutory factors of Code § 20-107.3(E) was properly considered. A trial court, when considering these factors, is not required to quantify the weight given to each, nor is it required to weigh each factor equally, though its considerations must be supported by the evidence. *Booth v. Booth*, 7 Va. App. 22, 28, 371 S.E.2d 569, 573 (1988). We find no error in the actions of the trial court with regard to this issue.

### III.

■ Code § 20-107.3(E)(5) states that the court, in making an award, may consider the circumstances and factors which contributed to the dissolution of the marriage, specifically including any grounds of divorce under the provisions of Code §§ 20-91(1), (3), or (6), or 20-95. The wife contends that the trial court failed to give sufficient weight to her husband's adulterous activity and the money spent in pursuit of that activity, when making the monetary award.

■ The circumstances that affect the marital economic condition must be considered for purposes of equitable distribution. We note initially, however, that adultery and other causes of dissolution are only one of ten factors the court must consider in balancing the equities in property distribution. Circumstances that lead to the dissolution of the marriage but have no effect upon marital property or its value are not relevant to determining a monetary award and need not be considered. A trial court need only consider those circumstances leading to the dissolution of the marriage that are relevant to determining a monetary award. *Aster v. Gross*, 7 Va. App. 1, 5, 371 S.E.2d 833, 836 (1988).

■ Despite the wife's claim that the husband spent substantial amounts of money on vacations during his affair, the record does not show and the trial court did not find evidence of such spending. While the trial court may consider the squandering of economic resources when making its award, we find no evidence of activity on the part of the husband which dissipated the marital estate. Accordingly, we find no error.

## IV.

■ "The function of the [trial court] is to arrive at a fair and equitable monetary award based on the equities and the rights and interests of each party in the marital property." *Mitchell v. Mitchell*, 4 Va. App. 113, 118, 355 S.E.2d 18, 21 (1987). There are three stages to making an equitable distribution of property. The court first must classify the property as either separate or marital. The court then must assign a value to the property based upon evidence presented by both parties. Finally, the court distributes the property to the parties, taking into consideration the factors presented in Code § 20-107.3(E).

Evidence was presented at trial that the wife's father made a contribution of $16,322.37 toward the acquisition and improvement of the couple's home, and that this money was an "advanced inheritance" to the wife. The wife contends that the court did not give proper consideration to the contributions by the father under Code § 20-107.3(E). We disagree.

■ The wife is asking the court, in essence, to consider the source of the funds when making an equitable distribution award. This type of analysis is inappropriate when classifying or valuing property unless the party is able to show that the marital property is, in fact, separate because, by tracing, the party can establish that property acquired during the marriage was obtained with totally separate funds and was maintained as separate property. Code § 20-107.3(A)(1)(iii). Such was not the case here. The Equitable Distribution Act does not adopt the "source of funds" doctrine for the classification of property. Assuming that the contributions made by the wife's father were in fact advances on her inheritance, these contributions of separate property were transmuted into marital property when they became commingled and

indistinguishable from other marital property.[1] *Smoot v. Smoot*, 233 Va. 435, 357 S.E.2d 728 (1987); *Westbrook v. Westbrook*, 5 Va. App. 446, 364 S.E.2d 523 (1988). Thus, the court's classification of the property as marital was correct. With regard to valuation, the court obviously is not concerned with the source of funds when assigning a value to the property.

While the source of funds is not a factor to be considered in the classification or valuation of the property, it is a factor properly considered when distributing the property between the parties. In distributing the marital property, the court is required to consider the eleven factors listed in Code § 20-107.3(E). Among those factors are "[t]he contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties." Code § 20-107.3(E)(2). It is at this juncture that the trial court may give consideration to the "advanced inheritance" claimed by the wife. The wife presented evidence of the contributions by the father. The court, however, rejected the amount of the contribution factor as a reason for making an increased award to the wife. This decision is within the sound discretion of the trial court and will not be overturned except for a clear showing of abuse. We find no such abuse in this case. The value of the marital home was enhanced by the advance of funds from the wife's father, by contributions from the husband's family[2] and by several years of market appreciation. The evidence did not show the extent to which the funds enhanced the value of the marital asset. We find no abuse of discretion in the trial court's action refusing to increase the wife's award because of her father's contributions.

## V.

There are two issues to be addressed concerning the trial court's valuation of the animal hospital: (1) whether the $22,000 tax lien should have been deducted from the value of the business; and (2) whether the court should have included the intangible asset of goodwill in the valuation of the business.

---

[1] The amendments to Code § 20-107.3, effective July 1, 1990, do not apply to this case.

[2] The record contains evidence that the husband's mother and uncle paid for or installed various improvements, such as having all of the floors sanded and some of the walls plastered.

 Code § 20-107.3(E)(7) requires consideration of the basis for the debts and liabilities of each party. When a legitimate debt is secured by a valid encumbrance on marital property, the amount of the indebtedness must be deducted from the gross value of the property to determine the net value for purposes of equitable distribution. *Trivett v. Trivett*, 7 Va. App. 148, 152, 371 S.E.2d 560, 562 (1988). In the instant case, the tax lien levied against the hospital was primarily for the income tax liability incurred by the operation of the hospital itself. Accounting evidence was offered to support the trial court's approach that the income tax lien should have been deducted when arriving at the net value of the business. Thus, the trial court acted properly when it deducted the amount of the lien from the value of the property.

 Regarding the second issue, goodwill has been defined as "the increased value of the business, over and above the value of its assets, that results from the expectation of continued public patronage." Oldham, *Divorce, Separation and the Distribution of Property* § 10.03 at 10-20 (1989). While some courts have refused to consider goodwill in valuing a professional practice, the majority of courts which have addressed the issue have held that goodwill is an asset of a professional practice, subject to valuation as marital property. *See, e.g., Dugan v. Dugan*, 92 N.J. 423, 433, 457 A.2d 1, 7 (1983); *Poore v. Poore*, 75 N.C. App. 414, 420-21, 331 S.E.2d 266, 271 (1985); *Heller v. Heller*, 672 S.W.2d 945, 948 (Ky. Ct. App. 1984); *Mueller v. Mueller*, 144 Cal. App. 2d 245, 250-51, 301 P.2d 90, 95 (1956).

 In *Russell v. Russell*, 11 Va. App. 411, 399 S.E.2d 166 (1990), this Court found the majority view persuasive and held that if the trial court determines from the greater weight of the evidence that a professional practice has goodwill, it must be valued as part of the marital property. *See also* L. Golden, *The Equitable Distribution of Property* §§ 6:21 and 7:11 (1983). The record contains the expert testimony of Louis Einwick regarding the valuation of the business enterprise, including goodwill. The trial judge accepted his testimony as he had the right to do. Credible evidence in the record supports the valuation of the animal hospital, and we find this assignment of error to be without merit.

## VI.

It is undisputed that the wife contributed substantially to the maintenance and care of the family while the husband obtained his degree. This contribution, the wife contends, entitles her to have the court consider the husband's future earning capacity when making the equitable distribution award. We disagree.

This Court, in *Reid v. Reid*, 7 Va. App. 553, 375 S.E.2d 533 (1989), held as follows:

Code § 20-107.3 provides for the equitable distribution of the *accumulated* marital wealth between the marital parties; it does not contemplate consideration of the *future* ability of one spouse to accumulate what will be separate property or the *future* needs of the other spouse. In short, the marital partnership notion terminates with the termination of the marriage and whatever marital wealth has been accumulated is to be equitably distributed at that time. It is axiomatic that whatever the future may hold for either of the parties has no bearing on the issue of the appropriate division of what has been accumulated by their contributions during the marriage.

*Id.* at 565, 375 S.E.2d at 540. In view of this holding, the trial court was under no duty to consider the husband's future earning capacity in making the equitable distribution award.

## VII.

In order to carry out the equitable distribution of the couple's property, the trial court ordered that the parties convey their interests in the respective properties in accordance with the award. This action, however, was filed before the 1988 amendments to Code § 20-107.3, which expressly granted the court the power to order conveyance of jointly-owned marital property. Prior to the 1988 amendments, this Court held that a trial court had no power to allot specific marital property not titled in the names of both parties. The party against whom a monetary award was made had the option of conveying property to satisfy the award with the court's approval, but that option was not given to the court. *Williams v. Williams*, 4 Va. App. 19, 23, 354 S.E.2d 64, 66 (1987). Thus, the wife contends that the court erred in ordering such transfers. Her contention presents the issue of whether the

1988 amendment is applicable to this case. We hold it is not.

As a general rule, laws existing at the time a suit is filed govern the case. *Shilling v. Commonwealth*, 4 Va. App. 500, 507, 359 S.E.2d 311, 315 (1987). An examination of the 1988 amendment to Code § 20-107.3(C) demonstrates no legislative intent that it apply to pending litigation. *See Price v. Price*, 4 Va. App. 224, 230, 355 S.E.2d 905, 908 (1987).

Moreover, we conclude that the amendment affects substantive rights. Prior to the amendment, the trial court could not assign, allot, or divide jointly-titled marital property except pursuant to the partition statute. *Morris v. Morris*, 3 Va. App. 303, 309-10, 349 S.E.2d 661, 665 (1986). Pursuant to a partition proceeding under Code § 8.01-81 et seq. the court had the power to allot real property to one of the parties or to order a sale thereof *only* after determining that the property could not be conveniently partitioned in kind. Code § 8.01-83; *Cauthorn v. Cauthorn*, 196 Va. 614, 620, 85 S.E.2d 256, 259 (1955). If the realty was "divisible in kind, any co-owner [had] the right to insist that partition be so made." *Nickels v. Nickels*, 197 Va. 498, 502, 90 S.E.2d 116, 118 (1955).

The 1988 amendment to Code § 20-107.3(C) gave the trial judge discretion to order a transfer of the property to one of the parties without first determining whether partition in kind could be conveniently made. Thus, under the amended statute, a transferor could be deprived of real property susceptible to partition in kind to which he or she would have been absolutely entitled under Code § 8.01-83. We hold that such a fundamental change in the law affects substantive rights and that the 1988 statutory amendment to Code § 20-107.3(C) was not merely procedural. It is irrelevant that the particular parcel of realty in this case might not have been susceptible to partition in kind. We further hold that the statute may not be applied so as to affect rights in a pending proceeding. Thus, in ordering a conveyance of the parties' interest in the respective properties, the trial court erred. *See Gaynor v. Hird*, 11 Va. App. 588, 400 S.E.2d 788 (1991).

## VIII.

Finally, the wife contends that the court should have given her credit for monies seized from her in execution of the IRS lien, and

that an Individual Retirement Account (IRA), in the possession of the husband, should have been included in the marital estate. We disagree with the former contention and agree with the latter.

We find no basis for the wife's contention that she should have received credit for the monies seized from her. The property which generated the tax liability was owned by both parties at the time the debt was generated, and both parties shared liability. The property seized from the wife to partially satisfy the IRS indebtedness was itself marital property and the evidence in the record shows that the husband has undertaken to pay a far larger portion of the tax liability than the wife. We find no error in the actions of the trial court in this regard.

We find that the court did err, however, by not including the IRA as marital property. This property was purchased in 1984, during the marriage, and is, therefore, "presumed to be marital property in the absence of satisfactory evidence that it is separate property." Code § 20-107.3(2)(iii). There is no evidence in the record that the IRA is Mr. Marion's separate property.

Accordingly, we set aside the monetary award made to the wife; vacate that portion of the final decree ordering transfer of the parties' interests in the jointly-owned realty; and direct the inclusion of the IRA, valued at $7,524.96, in the pool of marital property when reconsidering the equitable distribution of the parties' property. All other issues presented are affirmed.

*Affirmed in part;*
*reversed in part*
*and remanded.*

Coleman, J., and Cole, J., concurred.